This is an action in boundary, involving questions of ownership also as an *Page 1048 
issue, as the prescription of 30 years has been pleaded by defendant company.
Plaintiffs and defendant company own adjoining estates on bayou Lafourche: that of defendant company being the lower one.
Plaintiffs' tract measures 5 arpents front, more or less, and defendant company's 26 arpents front; each tract having a depth of 40 arpents.
Both properties are situated on the left descending bank of bayou Lafourche, below the town of Thibodaux. There is no dispute as to the location of the front property lines of the respective tracts. Defendant company admits its refusal to have a survey made, alleging that none is necessary, as there is already a division line established between the two contiguous estates, well defined on the ground by physical objects, works, constructions, and inclosures, placed and maintained there by the respective authors in title of plaintiffs and of defendant company for more than 30 years, and kept up as such by the present owners of said estates.
In the amended answer filed by defendant company, it is alleged that the well-established and fixed boundary line between the two estates, and upon which defendant company predicates its plea of prescription of 30 years, was established by Silas Taylor some time in April, 1859, at the request and with the consent of Adelard Boudreaux, the author of plaintiffs' title, and Celestin Delferes, the author of defendant company's, at the same time the whole of the original 40-arpent front track, formerly owned by Adelard Boudreaux and divers vendees holding under him, was surveyed and subdivided between the said Adelard Boudreaux and his vendees. Defendant company alleges that the said survey and the plat thereof, made by Silas Taylor under date of April 27, 1859, was recorded in the recorder's office in the parish of Lafourche, as appears by reference to said plan and divers acts of sales recorded in said recorder's office, and that the said *Page 1049 
survey was accepted by the said Adelard Boudreaux and the said Celestin Delferes, and the division line between the two estates established and maintained by them in accordance therewith, and has always been so accepted by succeeding owners of the respective tracts of land.
1. Suffice it to say that the Silas Taylor survey, if ever made, has not been placed of record, nor has any procès verbal thereof been found, nor was the trial judge impressed by the oral testimony as to this survey.
The only surveys appearing in the record affecting the lands in controversy in this case are the following:
(a) A resurvey of township 17 south, ranges 19 and 20 east, Southeast district of Louisiana, west of Mississippi river, made by Joseph Golinski, United States deputy surveyor, in 1857.
(b) A private survey and procès verbal made by J.A. Lovell of date April 3, 1915.
(c) A survey and procès verbal made by J.P. Kemper, of the city of New Orleans, under order of court, of date November 22, 1915.
As alleged in defendant company's answer, the physical objects, works, constructions, and inclosures, relied upon by said company as fixing the division line between the two estates —
"consist of a ditch on the upper side of respondent's tract of land, and a ditch on the lower side of the land claimed by plaintiffs, adjoining respondent's land, with a fence between the two ditches, separating the two estates, the fences and ditches extending from bayou Lafourche, in front, back some 10 or 12 arpents, from which point a canal, cut on the site of an old ditch, running to the swamp in the rear, continues the division line; on the other side, or beyond the swamp, which is some 1200 feet in width, the said line being marked and designated by a fence running back from the edge of the swamp to a grate bar at the end of the line, at 40 arpents from bayou Lafourche."
After reviewing the conflicting testimony in the case, the trial judge found that the preponderance of the evidence supported, *Page 1050 
in part, the claim of defendant company as to the division line asserted under the prescription of 30 years, and adopted accordingly, as to the front 8 arpents, the line on the map made by J.P. Kemper, the court surveyor, starting at the point B and running thence north 25° east 30'.
We approve and concur in the establishment of this line.
Able counsel for defendant company contends, however, that the line recognized by the trial judge should be prolonged by him in a straight line, running back to the 40-arpent line, citing, as authority for this contention, the case of Henderson v. St. Charles Church, 7 Mart. (N.S.) 117.
This contention is a virtual concession upon the part of defendant company that there are no physical objects, or established survey, along the line to be projected, to serve as a guide in determining its course, and therefore, as to the side line to be extended, there was not sufficient evidence before the trial judge to sustain the plea of prescription of 30 years.
Such was the holding of the court below, based upon the testimony of the surveyors and other witnesses and the procès verbal of the court surveyor in this case. In our opinion the holding is correct. It appears from the abstracts of title that the lands involved in this controversy emanated from a grant from the Spanish government to Valentine Saulet, which grant comprised a depth of only 4 arpents on each side of bayou Lafourche, and extended on the left descending bank, from the private confirmation of Celeste Lamate, above, to a similar grant of only 4 arpents deep to Etienne Guitrox, below.
From the resurvey of township 17 south, ranges 19 and 20 east, Southern district of Louisiana, west of the Mississippi, made by Joseph Golinski in 1854, it appears that all of the lands in the rear of the Valentine Saulet confirmation, for a depth of 36
arpents, are vacant United States lands, selected *Page 1051 
by the state under the Swamp Land Act.
Under Act 136 of the Legislature of 1858, the holders of land under the Valentine Saulet and Etienne Guitrox confirmations were permitted to extend their lines to the full depth of 40 arpents.
This act, however, does not designate the method to be employed by the holders under these confirmations, entitled to only 4 arpents deep, in extending the side boundaries beyond the limits of their original concessions to the 40-arpent line.
As the transcript is barren of records indicating the intent of the original owners as to the course that these side lines should take, and, as no fixed line of division as to these lines has been established by continuous and uninterrupted possession for 30 years, beyond the 8-arpent front line, it is clear that the direction in which these side lines should run is the real issue involved in this case.
We find from the procès verbal of J.P. Kemper, the court surveyor, that a width of 13 arpents on the front, extending from the line between J.T. Badeaux and Charles J. Plaisance to the line between C.L. Waguespack et al., plaintiffs herein, and the Lower Lafourche Planting Manufacturing Company, the defendant, would, if said lines, as now claimed by defendant company, were produced, give a width, in the rear at the 40-arpent line, of less than 4 arpents.
To run straight side lines from the end of the converged lines of the 8-arpent front, in accordance with the theory of defendant company, would deprive plaintiffs of 44.48 acres of land, as shown by the procès verbal of the Kemper survey, made under the orders of the district court in this case and approved by the trial judge, instead of dividing the 36-arpent area added to the rear of the original 4-arpent tracts proportionately among the owners, as has been done by the Kemper survey.
It is clear that the state, under the provisions *Page 1052 
of Act 136 of 1858, has made a grant in common to the original owners of the additional territory included within the 36-arpent limits, and that this property is beyond the limits of the titles of these owners of 4 arpents in depth.
Article 851 of the Civil Code provides that:
 "If the titles exhibited call for a greater or less extent of land than the land which is to be bounded, contains, the limits must be so fixed as to divide proportionately among the parties interested the profit or loss resulting from this state of things.
 "It is understood that the rules prescribed in this and the preceding articles, only take effect in the absence of possession by one or more of the parties, sufficient to establish prescription."
As the side lines to be run, beyond the 8-arpent front limit, are not affected by prescription in this case, we approve the Kemper survey and the proportional division made thereby among the parties to this suit.
The case of Henderson v. St. Charles Church, 7 Mart. (N.S.) 117, relied upon by defendant company, is based upon the particular facts of that case.
Judgment affirmed.
 On Application for Rehearing.